IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **JAMIE HOFFMAN**<br>1500 Snug Harbor Road<br>Shadyside, MD 20764<br><br>   *Plaintiff*,<br><br>  v.<br><br>**MONTGOMERY COUNTY,**<br>**MARYLAND**<br>Serve: Edward B. Lattner<br>Chief, Division of Government Operations<br>Office of the County Attorney<br>101 Monroe St, Third Floor<br>Rockville, MD 20850<br><br>and,<br><br>**SGT WILLIAM THOMAS**<br>*Individually and in his Official Capacity*<br>*as a Montgomery County Police Sergeant*<br>100 Edison Park Drive<br>Gaithersburg, MD 20878<br><br>   *Defendants*. | **\*Jury Trial Demanded**<br><br>Case No.: _____ |

## COMPLAINT AND JURY DEMAND

Comes now the Plaintiff, by and through undersigned counsel, and sues the above-named Defendants, stating as follows:

## JURISDICTION AND VENUE

1) This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this is a civil action arising under the Constitution, laws, or treaties of the United States.

2) Venue is proper in this forum pursuant to 28 U.S.C. § 1391 as the named Defendants carry on their principal place of business in Montgomery County, Maryland.

3)      This Complaint was filed within three years of the cause of action.

## PARTIES

4)      Plaintiff Jamie Hoffman is, and was at all times relevant to the occurrence complained of herein, an adult resident of Anne Arundel County, Maryland.

5)      Defendant Montgomery County, Maryland is a municipal corporation organized under the provisions of Art. XI-A of the Maryland Constitution. At all times mentioned, Montgomery County employed the individual Defendant, Sgt. William Thomas.

6)      Defendant Sgt. William Thomas #1169 ("Sgt. Thomas") is, and was at all times relevant to the occurrence complained of herein, an adult resident of Montgomery County. Sgt. Thomas is, and was at all times relevant to the occurrence complained of herein, employed by the Montgomery County Police Department ("MCPD") as a sergeant and was acting in his individual capacity and/or in his official capacity as a Montgomery County police sergeant. At all times relevant to this complaint, he was employed and engaged in an occupation with the Montgomery County Police Department and thus was acting under the authority and color of state law.

## FACTS COMMON TO ALL COUNTS

7)      On or about October 25, 2018, Plaintiff Jamie Hoffman ("Plaintiff" or "Mr. Hoffman") was assaulted by Sgt. Thomas of the Montgomery County Police Department.

8)      In the early hours of the morning, Mr. Hoffman was walking along Baltimore Avenue in Chevy Chase, Maryland and approached Sgt. Thomas's vehicle to inquire what time it was. Sgt. Thomas was dressed in plainclothes and was seated in an unmarked vehicle when Mr. Hoffman approached him.

9) Without explanation or identifying himself, Sgt. Thomas emerged from his vehicle and drew and deployed his taser at Mr. Hoffman, hitting him in the chest.

10) The shock from the taser stunned and disabled Mr. Hoffman, causing him to fall to the ground.

11) Despite that Mr. Hoffman was disabled by the initial taser shock, was unarmed, was not resisting arrest, and posed no threat of harm to Sgt. Thomas, Sgt. Thomas forced Mr. Hoffman to lay on the ground so that he could fasten handcuffs on Mr. Hoffman.

12) At no time was Mr. Hoffman advised of his rights.

13) After handcuffing Mr. Hoffman, Sgt. Thomas proceeded to unnecessarily "dry taser" Mr. Hoffman in the stomach.

14) Using excessive force, Sgt. Thomas assaulted Mr. Hoffman by pressing his knee into the side of Mr. Hoffman's head and neck, using the full force of his weight to keep Mr. Hoffman pinned to the ground.

15) In the process, Sgt. Thomas seriously injured Mr. Hoffman, leaving lacerations, bruising, and abrasions on the side of his face that had been in contact with the ground.

16) Mr. Hoffman screamed for Sgt. Thomas to release him from the knee hold to no avail, and shortly thereafter witnessed and Officers Michael Schmidt and Nathaniel Brubaker approach the scene with flashlights drawn.

17) Sgt. Thomas failed to release Mr. Hoffman from the knee hold even after Officers Schmidt and Brubaker arrived to provide backup.

18) When the three Officers finally allowed Mr. Hoffman to stand upright, he felt severe pain on his face from where Sgt. Thomas had applied pressure with his knee, and was bleeding profusely from the cuts that he sustained from the incident.

19) Mr. Hoffman remained compliant at all times during the incident and did not struggle. Initially, MCPD intended to bring a "resisting arrest" charge against Mr. Hoffman, but ultimately dropped the charge as there was no evidence to sustain it.

20) Sgt. Thomas and Officers Schmidt and Brubaker called an ambulance to the scene to assess Mr. Hoffman's wellbeing after the taser deployment.

21) Upon arriving at the scene, Montgomery County Fire and Rescue (MCFR) paramedics assessed the lacerations to Mr. Hoffman's face and, due to the severity of his injuries, elected to transport Mr. Hoffman to Suburban Hospital.

22) Mr. Hoffman was treated for his injuries at Suburban Hospital before being taken to Montgomery County's 2nd District Police Station for processing.

23) After posting bail, Mr. Hoffman took it upon himself to seek further treatment from an optometrist, Dr. Howard Nachman, who noted that Mr. Hoffman had sustained impaired vision in his left eye from the incident.

24) As a result of Defendant Sgt. Thomas's conduct described herein, Plaintiff suffered severe lacerations to his face, extreme bruising and swelling on the side of his face that came in contact with the ground during his arrest, impaired vision in his left eye, humiliation, and emotional pain and suffering.

25) As a result of the conduct described herein, Plaintiff suffered and/or continues to suffer from impaired vision and emotional pain and suffering.

**COUNT I**
**CIVIL RIGHTS ACT [42 U.S.C. §1983]**
**Fourth Amendment Excessive Force**
**Against All Defendants**

26) Plaintiff adopts and incorporates by reference each and every allegation contained in the foregoing paragraphs verbatim with the same effect as if fully set forth herein.

27) Defendants engaged in an activity that violated Plaintiff's rights as protected under the Fourth Amendment of the United States Constitution, namely freedom from excessive and unreasonable force.

28) Plaintiff has a right to be free from the use of excessive and unnecessary physical force on his person by the police. Plaintiff was denied this right when Defendant Sgt. Thomas knowingly used greater force than was necessary in effectuating a stop by using his knee to immobilize Plaintiff, causing physical injury, and repeatedly tasing Plaintiff.

29) At all times relevant hereto, Defendants acted under color of state law and in a manner which was not objectively reasonable.

30) Defendants were deliberately indifferent to Plaintiff's safety and rights.

31) As a direct and proximate result of the aforesaid conduct, actions, and inactions of Defendants and that stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, and embarrassment, all to his great detriment.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs, attorneys' fees, and punitive damages, in an amount to be determined at trial.

**COUNT II**
**CIVIL RIGHTS ACT [42 U.S.C. §1983]**
*Monell* **- Unconstitutional Pattern or Practice**
**Against Defendant Montgomery County**

32) Plaintiff adopts and incorporates by reference each and every allegation contained in the foregoing paragraphs verbatim with the same effect as if fully set forth herein.

33) Defendants maintained a policy of unconstitutional and unlawful supervision and abuse of authority.

34) Prior to the date of this incident, Defendants permitted and tolerated a pattern and practice of unjustified, unreasonable, and illegal excessive force and brutality through an abuse of power and authority.

35) The failure to properly train, prosecute, supervise, and discipline officers demonstrates a gross disregard for the constitutional rights of the public and the Plaintiff and was the proximate cause of the injuries sustained by Plaintiff.

36) Montgomery County has also instituted and maintained formal and informal customs, policies, and practices that foster, promote, and encourage officers to use excessive force and otherwise violate citizens' constitutional rights.

37) The use of excessive force occurs so frequently that it has become accepted manner by the defendants and other employees of Montgomery County. This is a result of Montgomery County's failure to establish effective procedures, rules, orders, guidelines, and practices to ensure that excessive force will not be used and to ensure that allegations of excessive force will be thoroughly investigated and appropriately punished when found to have occurred. As a result of this failure, there has been a regular pattern and practice of excessive force, cover-up, and failure to investigate. This pattern and practice has been manifested in other prior incidents involving county officers.

38) The violation of citizens' constitutional rights to be free from excessive force occurs frequently at the hands of Defendant County and its employees and is a result of the County's failure to properly train its employees and to establish effective procedures, rules, orders, guidelines, and practices to ensure that such violations will not occur and to ensure that

allegations of constitutional violations be thoroughly investigated and appropriately punished when found to have occurred.

39) Montgomery County has failed to effectively instruct officers that they have a duty to prevent and report excessive force when it occurs.

40) Montgomery county lacks an effective internal affairs procedure and has no meaningful system to control and monitor the recurrence of excessive force by officers who have a pattern or history of such behavior.

41) *Garcia v. Montgomery,* Case No. 8:12-cv-03592 (D. Md.); On or about June 16, 2011, Mannie Garcia was leaving a restaurant with his wife and a friend when he witnessed two MCPD officers arresting two young men and exercised his first amendment right to film police activity conducted in public. Despite that Mr. Garcia did not interfere with the police activity, the officers retaliated against him for filming the arrest and dragged him across the street and assaulted him, resulting in injuries. At no time was Mr. Garcia suspected of committing a crime or posing a threat that warranted his arrest or the excessive force used against him.

42) On August 23, 2013, Mr. Garcia's case survived the County's Motion to Dismiss for Failure to State a Claim. The Court sustained Mr. Garcia's claims for First and Fourteenth Amendment violations for the right to record police in the conduct of their official duties, retaliation, and Fourth and Fourteenth Amendment unreasonable search and seizure against one of the individual defendants. Additionally, the Court preserved his *Monell* claim against the County.

43) The parties in *Garcia* notified the court on January 27, 2017, that a settlement agreement had been negotiated for $45,000. *See Garcia v. Montgomery County, Maryland,* 2018 WL 1441189 (D. Md. March 22, 2018). Mr. Garcia was awarded attorneys' fees and costs.

44) Montgomery County's settlement in this case indicates its awareness of the Montgomery County Police Department's involvement in the type of conduct at issue as well as the unconstitutional nature of that conduct. The case was settled for a significant monetary payment, which speaks to the County's knowledge of how pervasive the underlying conduct is as well as the fact that the Plaintiff suffered both physical and constitutional harms.

45) *Howard v. Montgomery County, et al.,* Case No. 8:16-cv-03442 (D. Md.); On or about April 19, 2013, Montgomery County Police tasered Anthony Howard Sr. nine times in 37 seconds, ultimately killing him. Mr. Howard had been dancing barefoot on an SUV in a suburban cul-de-sac in Gaithersburg when two MCPD officers attempted to subdue him with pepper spray. Mr. Howard was noncompliant, but nonthreatening to the two officers and was unarmed when both officers deployed their weapons at the same time. The department refused to turn over video evidence from the incident and allegedly collected cell phones from bystanders and proceeded to erase video evidence from their devices.

46) Mr. Howard's estate voluntarily dismissed his complaint on October 14, 2016.

47) In June 2017, Mr. Howard's family settled the matter with Montgomery County for $1.75 million.

48) Montgomery County's settlement in this case indicates its awareness of the Montgomery County Police Department's involvement in the type of conduct at issue as well as the unconstitutional nature of that conduct. The case was settled for a significant monetary payment, which speaks to the County's knowledge of how pervasive the underlying conduct is as well as the fact that the Plaintiff suffered both physical and constitutional harms.

49) *Merriam v. Montgomery County, et al.,* Case No. 8:16-cv-00331 (D. Md.); On or about August 1, 2013, Scott Merriam was at a friend's home when he was awoken by an MCPD

officer striking him in the face. A group of officers wearing masks proceeded to step on Mr. Merriam's face and neck and then used a knee hold while they handcuffed him. Mr. Merriam suffered a concussion, multiple fractures to his right orbital bone, and a possible detached retina.

50) Mr. Merriam settled his case with the County and voluntarily dismissed his complaint on August 30, 2016. The County did not file a Motion to Dismiss or for Summary Judgment.

51) Montgomery County's settlement in this case indicates its awareness of the Montgomery County Police Department's involvement in the type of conduct at issue as well as the unconstitutional nature of that conduct. The case was settled for a significant monetary payment, which speaks to the County's knowledge of how pervasive the underlying conduct is as well as the fact that the Plaintiff suffered both physical and constitutional harms.

52) *J.A et al. v. Miranda,* Case No. 8:16-cv-03953 (D. Md.); On or about June 17, 2015, Ms. Johana Abrego called the MCPD for assistance when she realized that her home in Silver Spring was being burglarized by one of her sons. While officers were arresting the perpetrator, Ms. Abrego's younger son, J.A., who was 16 at the time of the incident, was brutally beaten during the arrest despite being unarmed. J.A. was left with "at least two broken teeth, four loose teeth, a lacerated lip, a concussion, a cut to the back of his head, and bruising on his neck and wrists."[1] "Defendant Officers then placed a bag over J.A.'s head and zip-tied the bag around his neck" before transporting him to the Montgomery County police station and charging him with obstructing and hindering an investigation and two counts of second-degree assault. The internal affairs investigation following the incident resulted in impunity.

---

[1] *J.A. v. Miranda*, 2017 WL 3840026 (D. Md. December 20, 2017).

53) On September 1, 2017, Plaintiffs' claims for unlawful arrest and excessive force survived the County's Motion to Dismiss.

54) On August 30, 2018, the District Court entered a settlement order dismissing the case without prejudice. The case was settled the following day.

55) Montgomery County's settlement in this case indicates its awareness of the Montgomery County Police Department's involvement in the type of conduct at issue as well as the unconstitutional nature of that conduct. The case was settled for a significant monetary payment, which speaks to the County's knowledge of how pervasive the underlying conduct is as well as the fact that the Plaintiff suffered both physical and constitutional harms.

56) *Hayat v. Diaz,* Case No. 8:20-cv-02994 (D. Md.); On or about October 22, 2017, Mr. Fareed Hayat, a professor of law at the Howard University School of law, was attending a homecoming celebration for former students and their families when two MCPD officers arrived to purportedly investigate a kidnapping report. Mr. Hayat respectfully declined the officers' request to enter the house. The two officers then forced their way into Mr. Hayat's home before forcefully pinning him down and using a knee hold to apply force to Mr. Hayat's spine. At no point did the officers have probable cause to arrest Mr. Hayat for any crime.

57) On January 27, 2022, the Court denied the County's Motion to Dismiss, preserving Mr. Hayat's Fourth Amendment excessive force claims.

58) Mr. Hayat's case is currently pending in the District Court for the District of Maryland. Most recently, the Court entered a scheduling order on March 25, 2022.

59) *Thompson v. Badgujar,* Case No. 8:20-cv-1272 (D. Md.); On or about June 11, 2018, a MCPD officer shot and killed 41-year-old Robert Lawrence White after failing to subdue him with non-fatal tactics during an altercation.

60) Mr. White's estate's claims are currently still pending in the District Court for the District of Maryland. On August 6, 2021, the Court entered an order dismissing the case, but directing the Plaintiffs to submit an amended complaint by September 10, 2021.

61) On September 10, 2021, Mr. White's estate submitted a Motion for Reconsideration regarding the Court's dismissal of the case accompanied by an amended complaint.

62) Plaintiff submitted a reply to the Defendant's Opposition to the Motion for Reconsideration on October 15, 2021. The Court has yet to rule on said reply.

63) *Pesoa v. Moris,* Case No. 482365V (Md. Cir. Ct.); On or about July 3, 2019, Arnaldo Pesoa was subjected to the same knee-to-head restraint method that was applied to Plaintiff as described herein. In an incident similar to Plaintiff's, MCPD officers caused severe injury to Mr. Pesoa while using the knee-to-head restraint method.

64) On July 15, 2021, Mr. Pesoa voluntarily dismissed his case. The County did not file a Motion to Dismiss or for Summary Judgment. The County ultimately awarded Mr. Pesoa $400,000 in settlement.

65) Montgomery County's settlement in this case indicates its awareness of the Montgomery County Police Department's involvement in the type of conduct at issue as well as the unconstitutional nature of that conduct. The case was settled for a significant monetary payment, which speaks to the County's knowledge of how pervasive the underlying conduct is as well as the fact that the Plaintiff suffered both physical and constitutional harms.

66) *Palma v. Montgomery County,* Case No. 8:21-cv-01090 (D. Md.); On or about September 13, 2019, numerous members of the MCPD executed a no-knock warrant and subjected innocent individuals Hernan and Lilian Palma, and their daughter, D. Palma, to

excessive and unreasonable force despite that they were not suspected of any wrongdoing. The Palmas simply resided in the home described in the no-knock warrant. Lilian suffers from a serious kidney disease and requires the assistance of medical devices such as a hemodialysis machine. Not only did the MCPD officers in question recklessly damage the Palmas' home and nearly break Lilian's hemodialysis machine, at one point, MCPD officers restrained Lilian, and in doing so, applied so much pressure that she "feared her catheter would be ripped out."[2] Officers also held down Mr. Palma so forcefully while handcuffing him that his face made a crack in the wall that it was pressed against.

67) The Palmas' case is currently pending in District Court. On April 12, 2022, the Court denied the County's Motion to Dismiss in full preserving all of the Palmas' claims which included a *Monell* claim and claims for excessive force.

68) On or about March 12, 2020, MCPD officers executed a no-knock warrant on the home of Mr. Duncan Lemp and fatally shot him in his home. Mr. Lemp was asleep in his bed in the early hours of the morning when the warrant was executed. His pregnant girlfriend, who was asleep next to him, was also injured.

69) Mr. Lemp's family has not yet proceeded with litigation.

70) On or about January 8, 2021, Montgomery County Police officers shot and killed 24-year-old Kwamena Ocran, during a chase in Gaithersburg, Maryland. Officers had allegedly received a tip that Mr. Ocran was selling drugs and claimed that he shot at the officers just before he was killed. Although investigative teams found the 23 shell casings released from the shots fired at Mr. Ocran, the team did find any physical evidence that Mr. Ocran fired a gun at the officers.

---

[2] *Palma v. Montgomery County, et al.*, Case No. 8:21-CV-01090-TJS, at 12, para. 69 (D. Md. May 5, 2021).

71) Mr. Ocran's family has not yet proceed with litigation.

72) *LeRoux et al. v. Montgomery County, Maryland et al.,* Case No. 8:22-cv-00856 (D. Md.); On or about July 16, 2021, Montgomery County Police shot and killed 21-year-old Ryan LeRoux in a McDonalds parking lot in Gaithersburg, Maryland. Mr. LeRoux allegedly had failed to pay for a meal that he purchased and would not move his vehicle from the drive-thru lane when MCPD was called upon to address the situation. When Mr. LeRoux sat upright in his car, having been in a reclined position, four MCPD officers opened fire on him and shot him 24 times.

73) Mr. LeRoux's case remains pending in the District Court. Dispositive motions have not yet been filed. On May 2, 2022, the Court granted the Defendants' Motion for Extension of Time to Answer Plaintiff's Complaint.

74) County governments, including the Montgomery County Government, have County Attorney's Offices who regularly defend the County and its officers in cases such as the instant one. Said attorneys are long-term salaried employees, and are not retained on a case-by-case basis. Naturally, therefore, the County, through the knowledge of its representing attorneys, has knowledge of each of the claims brought against it for excessive force and how many of those claims are pending, settled, or otherwise disposed of.

75) For example, in addition to the above-noted cases, the following cases against the County and Police Department are currently pending:

    a.     *Bagirova v. Montgomery County Maryland, et al.,* Case No. 486132V (Md. Cir. Ct.);

    b.     *Hughes v. Hackley, et al.,* Case No. 483289V (Md. Cir. Ct.);

    c.     *Killen v. Ratnofsky, et al.,* Case No. C-15-cv-22-00361 (Md. Cir. Ct.);

      d.     *Palmer v. Jones,* Case No. 06-01-004364 (D. Md.).

76) These cases further demonstrate that the Montgomery County Police Department's problematic custom of employing excessive force is continuing in nature.

77) Of the aforementioned cases:

    a.     Gessesse Teferi, Associate County Attorney at the Montgomery County Office of the County Attorney, and Defense counsel in the instant case, has also acted as defense counsel in *Pesoa*, and is currently defending the County in *Palma* and *LeRoux*;

    b.     Patricia Kane, Chief of the Division of Litigation at the Montgomery County Office of the County Attorney, acted as Defense counsel in *Garcia*. She is currently Defense counsel in *Hayat, Thompson, Palma, LeRoux, Pesoa, Bagirova, Hughes,* and *Killen*;

    c.     Patricia Haggerty, Associate County Attorney for the Montgomery County Office of the County Attorney, acted as Defense counsel in *J.A. v. Miranda*. She is currently Defense counsel in *Hayat, Thompson, LeRoux,* and *Bagirova*;

    d.     Jeanette Frumkin, Associate County Attorney at the Montgomery County Office of the County Attorney, acted as Defense counsel in *Garcia* and is currently Defense counsel in *Hayat* and *Bagirova*;

    e.     Matthew H. Johnson, Assistant County Attorney at the Montgomery County Office of the County Attorney, is currently Defense counsel in *Thompson* and *Hughes*;

14

   f.  Jacquelyn Allen, Associate County Attorney at the Montgomery County Office of the County Attorney, is currently Defense counsel in *Palma* and *Killen*;

   g.  Stephanie Ferner, Associate County Attorney at the Montgomery County Office of the County Attorney, acted as Defense counsel in *Pesoa* and is currently Defense counsel in *Hughes*;

   h.  Justin Nunley, Attorney at the Montgomery County Office of the County Attorney, acted as Defense counsel in *J.A. v. Miranda* and *Merriam*.

78) As a result, Montgomery County attorneys are not properly motivated to settle cases to avoid an award of attorneys' fees because no such fees are being incurred.

79) In the majority of police misconduct cases handled by the County, the costs to the County are negligible. The County rarely employs expert witnesses in such cases, and when they do, it is typically a single police practices witness who is often also a police officer. Consequently, cases are often settled for far less than the above-cited settlement amounts in order to further avoid costs.

80) Because the County is not motivated to avoid incurring counsel fees and costs in the resolution of lawsuits, settlements listed above indicate the County's knowledge and awareness of both the conduct at issue as well as the unconstitutionality of that conduct.

81) Furthermore, Montgomery County Police lawsuit settlements must be approved and reviewed by a number of high-ranking public officials and are included in reports sent on a regular basis to the County Council itself. The County's consistent practice of settling cases specifically to avoid admitting liability is thereby approved by County officials and inherently condones the use of excessive force by County Police officers.

82) Every elected official in the County with decision making authority over police settlements has an ethical and legal duty to apprise themselves of the information referenced herein and to act on it.

83) A recent summary from the Litigation Division in the Office of the County Attorney reveals that, of the Self Insurance Fund (SIF) and non-SIF cases that concluded in fiscal years (FY) 2019, 2020, 2021, and the first quarter of FY2022, the Police Department has a substantially higher number of cases brought against it than any of the fifty-four (54) other County agencies listed.[3]

    a. In FY2019, the Montgomery County Transportation Department (Ride-On) had the second highest number of cases resolved, with thirty-five (35) cases total. In comparison, the Police Department had the highest number of cases out of any of the listed agencies, with a total of two hundred and sixteen (216) SIF and non-SIF cases. That's more than six times the number of cases against the Transportation Department.

    b. Similarly, the Police Department continued to have the highest number of cases disposed of in FY2020, 2021, and the first quarter of 2022, with hundreds of cases against the department resolved each year while the remaining agencies had far fewer. The highest number of cases resolved against any agency in those years was thirty-three (33), in stark contrast to the Police Department's triple-digit records.

---

[3] *Case Closeouts from July 1, 2021 to March 31, 2022,* Montgomery County Office of the County Attorney, available at https://www.montgomerycountymd.gov/cat/resources/files/Monthly-Rpt/litigation.pdf (last accessed May 13, 2022).

      c.      This trend has persisted since at least three years prior to the release of this particular report.

84) Agencies listed in the report included the Department of Corrections and Rehabilitation, the Board of Education, Alcohol Beverage Services, and Fire and Rescue--all of which one might presume would have a significant number of claims levied against them due to their higher rates of contact with the public and retention of far more employees than the Police Department.

85) Given that the Montgomery County Police Department has the most litigation activity of all the County's agencies, this should indicate to County leaders that there is a serious issue with the Department's practices which requires addressing. County leaders are far from blind to the issue, since the report yielding the above data is not only publicly available, but was compiled and released by the County Attorney's Office and delivered to the County Council.

86) Montgomery County has failed to keep accurate records as to the number of instances where excessive force has been employed by its officers. This policy encourages officers to habitually use excessive force and inhibits Montgomery County from critically evaluating the need for a change in training.

87) The policies and customs of Montgomery County, as set fort herein, demonstrate a gross disregard for the constitutional rights of the public and the Plaintiff. At the time of injury to Plaintiff, Defendants were operating under unconstitutional customs, policies, and procedures. These customs, policies, and procedures were a proximate cause of the injuries to Plaintiff.

88) As a result, the individual Defendant has been caused and encouraged to believe that excessive force and illegal force could be used, and that it would be permitted without reproach.

89) Defendant County should have foreseen that such a policy would promote the use of illegal, unconstitutional, and excessive force, where such force is unreasonable.

90) As a direct and proximate result of the aforesaid conduct, actions, and inactions of Defendants and that stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain, and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, and embarrassment, all to his great detriment.

## **JURY DEMAND**

Plaintiff requests a trial by jury for all claims so triable.

Respectfully submitted,

HANSEL LAW, PC

_____

Cary J. Hansel (Bar No. 14722)
cary@hansellaw.com
2514 North Charles Street
Baltimore, MD 21218
T: 301-461-1040
F: 443-451-8606
*Counsel for Plaintiff*