IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JAMIE HOFFMAN, | * |
| Plaintiff, | * |
| v. | *  Civil Action No. GLS 21-2727 |
| MONTGOMERY COUNTY, *et al*, | * |
| Defendants. | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OPINION**

Currently pending before this Court[1] are letter requests filed by Defendant Montgomery County, Maryland ("Montgomery County"), in which it seeks dismissal of Count II of the Amended Complaint. Alternatively, Montgomery County seeks to bifurcate Count I and Count II, to stay discovery as to Count II until the resolution of Count I, and to have two separate trials. (ECF Nos. 22, 26, 39, 43). Given the comprehensiveness of the pleadings, this Court construes these letter requests as a motion to dismiss Count II or alternatively as a motion to bifurcate discovery and trial. ("Motion to Dismiss-Bifurcate"). Plaintiff Jaime Hoffman ("Plaintiff" or "Mr. Hoffman") has opposed the Motion to Dismiss-Bifurcate. (ECF Nos. 24, 41). At a hearing, the Court entertained oral argument on the issues raised by Defendant Montgomery County. (ECF No. 28). The Court finds that no further hearing or briefing is necessary for it to resolve the issues.

For the reasons set forth below, Montgomery County's Motion to Dismiss-Bifurcate is **GRANTED IN PART, DENIED IN PART.**

---

[1] The parties have consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c). (ECF No. 18).

I. **BACKGROUND**

A. **Factual Background**[2]

On or about October 25, 2018, during the earlier morning hours, Plaintiff was walking on Baltimore Avenue in Chevy Chase, Maryland when he approached Montgomery County Police Department ("MCPD") Sgt. William Thomas ("Defendant" or "Sgt. Thomas"), who was seated in an unmarked vehicle and dressed in plainclothes. (Amended Complaint, ¶ 8). Plaintiff approached the Defendant to ask him the time. Sgt. Thomas stepped out of the car, drew and fired his taser at Plaintiff, hitting him in the chest. (*Id.*, ¶ 9). Plaintiff was stunned and disabled by the taser and fell to the ground. Despite not being armed nor resisting arrest, Sgt. Thomas "forced Mr. Hoffman to lay on the ground so that he could fasten handcuffs" on him. Sgt. Thomas did not advise Mr. Hoffman of his rights. (*Id.*, ¶¶ 10-12). Sgt. Thomas then "unnecessarily 'dry taser[ed]' [Plaintiff] in the stomach," and pressed his knee into the side of Plaintiff's head and neck, "using the full force of his weight to keep [Plaintiff] pinned to the ground." (*Id.*, ¶¶ 13, 14). As a result, Plaintiff sustained lacerations, bruising, and abrasions on that part of his face that had been on the ground. Plaintiff screamed for Sgt. Thomas to release him from the knee hold, which was ignored. (*Id.*, ¶¶ 15-16). Plaintiff observed two more Montgomery County Police Officers approach the scene, yet Sgt. Thomas maintained a knee hold on Plaintiff. Plaintiff did not resist or struggle during the incident. (*Id.*, ¶¶ 16, 19). Ultimately, Plaintiff was allowed to stand up, at which point he felt "severe pain on his face from where Sgt. Thomas had applied pressure with his knee." Plaintiff was profusely bleeding. (*Id.*, ¶¶ 16-18). An ambulance arrived on the scene and paramedics

---

[2] Unless otherwise noted, the facts are taken from the Amended Complaint, which as set forth in Section I.B., is the operative pleading. The facts are construed in the light most favorable to the non-moving party, Plaintiff, and are assumed to be true. *See Baltimore Scrap Corp. v. Exec. Risk Specialty Ins. Co.*, 388 F. Supp. 3d 574, 584 (D. Md. 2019) ("In reviewing a 12(b)(6) motion, a court must accept as true all of the factual allegations contained in the complaint and must draw all reasonable inferences from those facts in favor of the plaintiff").

assessed Plaintiff's facial injuries before taking him to Suburban Hospital, where he received treatment for his injuries. (*Id.*, ¶¶ 20-22). After his release from the hospital, law enforcement transported Plaintiff to the police station for processing for a resisting arrest charge, which was later dropped. (*Id.*, ¶¶ 19, 22). Thereafter, Plaintiff sought treatment from an optometrist, who found that Plaintiff had sustained impaired vision in his left eye. (*Id.*, ¶ 23).

### B. Procedural Background

As a result of the incident, Plaintiff filed a two-count complaint advancing: a Fourth Amendment excessive force claim against Defendants Sgt. Thomas and Montgomery County, in violation of 42 U.S.C. § 1983 (Count I); and a Section 1983 claim against Montgomery County, claiming that its police officers used excessive force against citizens resulting in their injury, and in so doing those officers were engaging in a custom, pattern and practice of Montgomery County that violated the citizens' constitutional rights (Count II). (ECF No. 1, Complaint). In support of Count II, Plaintiff listed eleven instances of alleged excessive force by Montgomery County police officers, which purportedly occurred between in or about 2011 through in or about 2021. Plaintiff also set forth facts suggesting that Montgomery County: (1) failed to train its officers not to use excessive force; (2) failed to train its officers that they have a duty to prevent and report excessive force; and (3) failed to evaluate whether training changes were appropriate. (Complaint, ¶¶ 35-39, 52).

Thereafter, Montgomery County filed letter requests seeking to dismiss Count II pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, to bifurcate Count II for purposes of discovery and trial. Montgomery County argues that Count II should be dismissed because Plaintiff failed to adequately plead sufficient facts to establish an official policy or custom of Montgomery County that was widespread, and that proximately led to the alleged constitutional violation. In particular,

Montgomery County contended that Plaintiff failed to identify instances "of the same type of alleged unconstitutional use of force" that predate his incident and are widespread; thus, Plaintiff cannot establish that Montgomery County had actual or constructive knowledge of a custom that it failed to correct. (ECF No. 22). In addition, Montgomery County challenged what it characterized as Plaintiff's insufficient, "threadbare recitals" of a failure-to-train claim. (ECF Nos. 22, 26). Alternatively, Montgomery County urged the Court to bifurcate Count I from Count II, staying discovery against Montgomery County until the resolution of the excessive force claim involving Sgt. Thomas. According to Montgomery County, bifurcation of discovery and trial is "the only way to preserve the parties' resources, promote judicial economy and prevent unfair prejudice to the Defendants." (ECF No. 22).

In response, Plaintiff argues that he has met his pleading burden, contending that the eleven examples in the Complaint establish that Montgomery County had an unspoken custom, policy and practice of "promoting and encouraging the use of excessive force" by its police officers, and that it had ample notice of the same. Plaintiff also argues that at the motion to dismiss stage he is not limited to only those examples of conduct that are identical to and predate his incident in order to establish a pattern or practice claim. (ECF No. 24). Plaintiff further contends that dismissal of Count II is premature as he has not had an opportunity to "discover information that is essential to his opposition." (*Id.*). Plaintiff also generally argues against bifurcation of the Counts, noting that even though that practice is common in the District of Maryland, conducting two discovery periods and trials is "costly, inefficient and [a] time-consuming way of obtaining justice." (*Id.*). Finally, Plaintiff objected to dismissal on the basis of "conflicted counsel," i.e., bifurcation may benefit Montgomery County, but allegedly harms Sgt. Thomas. (*Id.*).[3]

---

[3] In his pleadings, Mr. Hoffman fails to offer any facts or cite to any caselaw that support this argument. Because the Court is partially bifurcating this case, *see* Section III.D., *infra*, the Court need not reach this issue.

The Court presided over a telephonic hearing, during which it entertained oral arguments related to the requests to dismiss or bifurcate Count II. (ECF No. 28). The Court denied the municipality's request to dismiss Count II as premature, allowing Plaintiff to file an Amended Complaint, including to more fully allege Montgomery County's customs, policies and practices related to the use of excessive force and notice to Montgomery County related thereto.[4] The Court deferred ruling on the bifurcation question. (ECF Nos. 28, 29).

Subsequently, Plaintiff filed his Amended Complaint. (ECF No. 32). Count I remained unchanged, i.e., Count I still alleges that Defendants violated the Fourth Amendment and Section 1983 as a result of Sgt. Thomas' use of excessive force against Plaintiff. Count II has been amended, including to contain additional facts about: the procedural posture of the eleven instances that were included in the Complaint; four other excessive force incidents not described in the Complaint; and the involvement of counsel for Montgomery County in police misconduct cases. (Amended Complaint, ¶¶ 41-90). The Amended Complaint alleges that: the Montgomery County police officers' use of excessive force is a common and accepted practice; Montgomery County has customs, policies, or practices by which it has decided affirmatively not to train police officers about their legal duty not to use excessive force against citizens; and Montgomery County has customs, policies, or practices to not correct persistent and widespread excessive uses of force via various methods. (Amended Complaint, ¶¶ 33-40). According to the Amended Complaint, these additional facts establish notice, knowledge and awareness of Montgomery County. (Amended Complaint, ¶¶ 41-90). In essence, then, Plaintiff alleges the following customs, policies, or practices violations by Montgomery County: an unconstitutional pattern and practice claim and a failure to train claim. (*Id.*).

---

[4] The Court also requested that Plaintiff address the framework set forth in *Peterson v. Prince George's County*, Civ. No. PWG 16-1947, 2017 WL 2666109 (D. Md. June 21, 2017). (ECF No. 29).

Montgomery County has again sought dismissal of Count II of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) or alternatively bifurcation of Counts I and II for discovery and trial. (ECF Nos. 39, 43). Plaintiff has opposed the Motion to Dismiss-Bifurcate. (ECF No. 41).

## II.  STANDARD OF REVIEW

A defendant who files a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the facts set forth in a complaint. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016); *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). Such a motion does not "resolve the contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King*, 464 F.3d at 483 (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).

To survive a motion to dismiss, a complaint must satisfy the pleading standard set forth in Fed. R. Civ. P. 8(a) and contain facts "showing" entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (complaint must set forth enough facts as to suggest a "cognizable cause of action"). In other words, a complaint must do more than formulaically recite "the elements of a cause of action," or must do more than make "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alternation in original) (internal quotation marks omitted) (quoting *Twombly*, *supra* at 555, 557). A complaint must allege sufficient facts to establish each element of a claim asserted. *Goss v. Bank of Am., N.A.*, 917 F. Supp. 2d 445, 449 (D. Md. 2013), *aff'd sub nom.*, *Goss v. Bank of Am., N.A.*, 546 F. App'x 165 (4th Cir. 2013).

At the motion to dismiss stage, a court considers the complaint as a whole and construes the facts advanced as true, viewing them in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 555. Finally, if the complaint at issue involves a Section 1983 claim, the court "must be

especially solicitous of wrong alleged," and "should not grant a motion to dismiss [unless] it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory [that] might plausibly be suggested by the facts alleged." *Peprah v. Williams*, Civ. No. GLR 18-990, 2019 WL 224245, at *2 (D. Md. Jan. 15, 2019) (quoting *Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 152 (4th Cir. 1988) and *Canty v. City of Richmond, Va. Police Dep't*, 383 F. Supp. 1396, 1399 (E.D. Va. 1974)).

## III. DISCUSSION

### A. Section 1983: Municipal Policy or Custom

Pursuant to 42 U.S.C. § 1983, a plaintiff may file suit against any person who acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person. . . to deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. A municipality is subject to suit under Section 1983 "if the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by [the municipality's officers]." *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 (1978).

A *Monell* claim must set forth sufficient facts to establish the existence of an unconstitutional "official policy or custom that is fairly attributable to the municipality [that] proximately caused the deprivation of [a plaintiff's rights]." *Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994).

A plaintiff can establish the existence of a policy or custom through: (1) the decisions made by a government's lawmakers; (2) the acts of a government's policymaking officials; (3) an omission, e.g., a "local government's decision not to train certain employees about their legal duty

7

to avoid violating citizens' rights" and; (4) practices that are so "persistent and widespread" as to constitute a custom with the force of law. *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

In the instant case, the Amended Complaint does not refer to an explicit policy, decision, act, or regulation made by government lawmakers or policymaking officials. Instead, the Plaintiff has pleaded a widespread pattern and practice of county police officers using excessive force against citizens. Relatedly, Plaintiff contends that the custom results from MCPD's "failure to properly train" its officers not to use excessive force. The Court addresses these theories below.

**B. Pattern and Practice**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. A "seizure" of a "person" must be reasonable in order to comply with the Fourth Amendment. *See generally District of Columbia v. Wesby*, ⸺ U.S. ⸺, 138 S. Ct. 577 (2018). A claim of excessive force used during an arrest invokes the protections of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989).

In seeking dismissal of Count II, Montgomery County first contends that the majority of the excessive force incidents listed in the Amended Complaint are not similar in nature to—and postdate—Plaintiff's incident. Thus, Plaintiff has failed to aver sufficient facts to establish persistent and widespread practices that Montgomery County knew about, which constituted an official custom or policy. Relatedly, to the extent that any of the excessive force incidents that predate or postdate Plaintiff's incident involved settlements and not final adjudications, these incidents do not establish Montgomery County's notice of the officers' unconstitutional conduct.

To establish liability against a municipality based on an unconstitutional custom or pattern and practice, Plaintiff has to show "a 'persistent and widespread practice of municipal officials,'

the 'duration and frequency' of which indicate[s] that the [officials]: (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" *Owens*, 767 F.3d at 402 (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987). Put another way, one or two isolated constitutional violations are insufficient to establish knowledge. *Spell*, 824 F. 2d at 191.

In evaluating the case at this procedural juncture, it is important for the Court to consider Rule 8(a)'s pleading requirement. Thus, while it might be difficult for a plaintiff to prevail on the merits of a *Monell* claim, an adequately-plead *Monell* claim must simply comply with Rule 8(a)'s "short-and-plain-statement" pleading requirement. *Owens* 767 F.3d at 403. In other words, to survive a Rule 12(b)(6) challenge, a plaintiff "need only allege [sufficient] facts" that establish a plausible claim. *Owens*, 767 F.3d at 403. The facts set forth in the complaint "need not be particularly detailed, and the chance of success need not be particularly high." *Id.* at 403 (quoting *Iqbal*, 556 U.S. at 678).

After reviewing the Amended Complaint and construing the facts in the light most favorable to Plaintiff, the Court finds that Mr. Hoffman has complied with Rule 8(a)'s pleading requirement, and has stated a plausible claim of an unconstitutional custom of MCPD's use of excessive force. Mr. Hoffman alleges that after he asked Sgt. Thomas to tell him the time, Sgt. Thomas fired his taser at him, which caused him to fall to the ground. Despite not being armed nor resisting arrest, Sgt. Thomas forced Mr. Hoffman to lay on the ground so that he could handcuff him. Sgt. Thomas then "dry-tasered" Plaintiff in the stomach and pressed his knee into the side of Plaintiff's head and neck to keep Mr. Hoffman pinned to the ground. Sgt. Thomas ignored Mr. Hoffman's pleas to release him from the knee hold. Two more Montgomery County Police Officers approached, and Sgt. Thomas maintained a knee hold on Plaintiff. Plaintiff did not resist

or struggle during the incident. (Amended Complaint, ¶¶ 8-19). The Amended Complaint offers more isolated instances of excessive force. Plaintiff has sufficiently pleaded at least three instances that predate his incident, which are sufficiently similar to the type of force at issue here: (1) in April 2013, MCPD officers tasered Anthony Howard, who was unarmed and nonthreatening while he was dancing on an SUV and not complying with the officer's directives; (2) in August 2013, MCPD officers awoke Scott Merriam by striking him in the face, and then stepped on his face and neck and used a knee hold to handcuff him; (3) in October 2017, after Professor Fareed Hayat refused to allow MCPD officers to enter his home to investigate a kidnapping report, the officer forced their way inside and pinned him down using a knee hold to apply force to his spine. (Amended Complaint, ¶¶ 45, 49, 56).

An unconstitutional pattern and practice custom claim "can survive even when [the] plaintiff provides few examples." *Washington v. Balt. Police Dep't*, 457 F. Supp. 3d 520, 535-36 (D. Md. 2020). In short, the Court finds that these three examples of excessive force are sufficiently similar to Mr. Hoffman's incident that "municipal employees could reasonably infer from [them] tacit approval of the conduct in issue." *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984).

In addition, even though at this procedural juncture, Plaintiff need not "plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation," *Jordan,* 15 F.3d at 339, Plaintiff has sufficiently pleaded another incident that is sufficiently similar to his incident: in July 2019, MCPD officers applied a knee-to-the-head method to restrain Arnaldo Pesoa. (Amended Complaint, ¶ 63). Even though this incident postdates Mr. Hoffman's, another court in the District of Maryland has permitted a case to proceed where only most of the incidents of similar unconstitutional conduct

predated the event in issue. *Johnson v. Baltimore Police Department*, Civ. No. ELH 19-698, 2020 WL 1169739, at *36 (D. Md. Mar. 10, 2020) (twelve instances of similar conduct, most of which occurred before the incident in question).

Furthermore, the Amended Complaint plausibly alleges two other instances of excessive force that predate Plaintiff's incident, and thus are relevant to Montgomery County's knowledge of constitutional violations and whether it acted with deliberate indifference: (1) in 2011, MCPD officers dragged Mannie Garcia across the street and assaulted him, after he filmed their arrest of two men. There is no allegation that he was resisting arrest; and (2) in 2015, MCPD officers beat an unarmed juvenile whom they were arresting for burglary, and placed a bag over his head and "zip-tied the bag around his neck." There is no allegation that he threatened the officers. (Amended Complaint, ¶¶ 41, 52). Again, at this procedural posture, to survive a Rule 12(b)(6) challenge, Mr. Hoffman "need[s] only [to] allege [sufficient] facts" that establish a plausible claim, and "the chance of success need not be particularly high." *Owens*, 767 F.3d at 403.[5] The incidents need not be identical. *See Booker v. City of Lynchburg*, Civ. No. 20-011, 2021 WL 519905, at *4 (W.D. Va. Feb. 11, 2021) (sufficiently-pleaded custom of excessive force, where two incidents involved canine dog attacks and two incidents involved officers beating and using pepper spray against individuals). In sum, adding these two incidents to the other four examples of excessive use of force are enough to establish a plausible claim of an unconstitutional custom that survives

---

[5] Per the Court's order, the parties analyzed *Peterson v. Prince George's County*, Civ. No. PWG 16-1947, 2017 WL 2666109 (D. Md. June 21, 2017). Upon further reflection and understanding of the relevant case law, the question of whether or not any incidents alleged in the Amended Complaint resulted in settlements or adjudications is improper at this juncture, given that Plaintiff need only recite sufficient facts that merely state a plausible claim and the chance of success "need not be particularly high." *Owens*, 767 F.3d at 403. Plaintiff should be given the opportunity to discover information exclusively within the control of Montgomery County. *Johnson v. Prince George's Cnty.,* 2011 WL 806448, at *1). Were this case at the summary judgment stage, the analysis would be different. *See Amann v. Prince George's Cnty.,* Civ No. DKC 99-3759, 2001 WL 706031, at *2 (D. Md. Jun. 15, 2001) (complaints that do not result in a finding of excessive force are mere allegations and not facts showing notice of unconstitutional behavior); *Meredith v. Prince George's Cnty.,* Civ. No. DKC 19-3198, 2022 U.S. Dist. LEXIS 4908, at *20-24 (D. Md. Jan. 10, 2022) (subsequent or unresolved lawsuits do not establish notice of unconstitutional behavior).

challenge. If true, these six incidents plausibly demonstrate that Montgomery County "permitted and tolerated a pattern and practice of unjustified, unreasonable and illegal excessive force and brutality." (Amended Complaint, ¶ 34).[6]

There are nine other incidents in the Amended Complaint. Six of them are insufficiently pleaded, as Plaintiff has provided no factual details or merely threadbare recitals of facts, namely the following cases: White, Bagirova, Hughes, Killen, and Palmer. (Amended Complaint, ¶¶ 59, 68, 75). Accordingly, Plaintiff has not met the "short-and-plain" pleading requirement of Rule 8(a), *see Owens,* 767 F.3d at 403, and Montgomery County's dismissal request as to these claims will be granted. With respect to the remaining three incidents in the Amended Complaint, all of them postdate Plaintiff's incident: (1) in September 2019, MCPD officers executed a no-knock warrant at the plaintiffs' home, and restrained Lilian Palma with a lot of force and held down Hernan Palma while handcuffing him with such force that his face made a crack in the wall; (2) in January 2021, MCPD officers fired 23 shots and killed Kwamena Ocran during a chase; and (3) in July 2021, MCPD officers fired 24 shots and killed Ryan LeRoux in a McDonald's parking lot after he sat upright in his car. (Amended Complaint, ¶¶ 66, 70, 72). During the hearing, Plaintiff's counsel argued that incidents that post-date Plaintiff's incident are relevant not on the question of notice but, rather, relevant to establish that the incidents are persistent, frequent, and widespread. In other words, Plaintiff seems to believe that he has to plead a certain number of incidents for there to be a pattern that is widespread. The Court disagrees that there need to be a certain number

---

[6] Montgomery County relies on several summary judgment decisions to support dismissal. *See, e.g., Amann v. Prince George's Cnty.,* Civ No. DKC 99-3759, 2001 WL 706031, at *2 (D. Md. June 15, 2001); *Semple v. City of Moundsville,* 195 F.3d 708 (4th Cir.1999); *Boyd v. Armstrong,* Civ. No. ELH 17-2849, 2019 WL 1996876 (D. Md. Mar. 29, 2019); *Sparrow v .City of Annapolis,* Civ. No. WMN 16-1394, 2017 WL 3413576 (D. Md. Aug. 9, 2017); and *Meredith v. Prince George's Cnty.,* Civ. No. DKC 19-3198, 2022 U.S. Dist. LEXIS 4908, at *20-24 (D. Md. Jan. 10, 2022). This is inappropriate at the motion to dismiss stage as it "seeks to foist an unreasonable standard upon [Plaintiff's] *Monell* claim." *Est. of Bryant v. Balt. Police Dep't,* Civ. No. ELH 19-384, 2020 WL 673571, at *36 (D. Md. Feb. 10, 2020).

of incidents to constitute a frequent and widespread pattern. *Washington*, *supra*, 457 F. Supp. 3d at 535-36. The Court also does not find that these three cases help to establish that Montgomery County had actual or constructive knowledge at the time of Mr. Hoffman's incident of an unconstitutional practice or custom in the MCPD of using excessive force that led to his constitutional violation. *Milligan*, *supra*, at 230.

In sum, the Court will not dismiss Mr. Hoffman's pattern and practice claim.[7] Plaintiff has plausibly alleged sufficient facts as to six incidents to demonstrate that Montgomery County had a practice "the 'duration and frequency' of which [indicated it]: (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" *Owens, supra,* at 403.

### C. Failure to Train Claim

Next, Montgomery County avers that Plaintiff's failure to train claim is merely boilerplate and conclusory. The Court disagrees.

There are three elements to a *Monell* failure to train claim, which requires a plaintiff to plead facts related to: (1) the nature of the training; (2) how the municipality made a "deliberate or conscious" choice to have insufficient training; and (3) how the officer's unlawful conduct results from that training. *Jones v. Chapman*, Civ No. ELH 14-2627, 2015 WL 4509871, at *18 (D. Md. Jul. 25, 2015); *see also Lewis v. Simms*, Civ. No. AW 11-2172, 2012 WL 254024, at *3 (D. Md. Jan. 26. 2012). Consistent with Rule 8(a)'s pleading requirements, Plaintiff may not just broadly state that MCPD "failed to train and supervise its officers." *Peters v. City of Mount*

---

[7] Plaintiff's related condonation claim also survives the motion to dismiss. Here, Mr. Hoffman lists several incidents of excessive force that predate his incident, and that there has been a "regular pattern and practice of excessive force, cover-up, and failure to investigate. (Amended Complaint, ¶¶ 34, 37, 41, 45, 49, 56, 57). If ultimately established following discovery, these facts could establish that Montgomery County had a persistent and widespread practice or custom of not discouraging MCPD officers from using excessive force that reflect Montgomery County's deliberate indifference to its citizens' constitutional rights to be free from excessive force. *See Peprah*, 2019 WL 224245, at *9 (same).

13

*Rainier,* Civ No. GJH 14-955, 2014 WL4855032, at *5 (D. Md. Sept. 29, 2014). Nor may Plaintiff just state in conclusory fashion that the training was somehow "lax" or "ineffective." *Spell*, *supra*, 824 F.2d at 1390.

In the instant case, Plaintiff satisfies Rule 8(a)'s requirements when describing the nature of the training. Plaintiff plausibly alleges that Montgomery County failed to properly train its employees on the permissible uses of force and how not to engage in excessive force, which was the "proximate cause of the injuries sustained by Plaintiff." (Amended Complaint, ¶¶ 35, 38). Mr. Hoffman also alleges that Montgomery County "failed to effectively instruct officers that they have a duty to prevent and report excessive force when it occurs." (Amended Complaint, ¶ 39). Plaintiff further alleges that Montgomery County fails to keep records on excessive forces incidents, which "inhibits [it] from critically evaluating the need for a change in training.' (Amended Complaint, ¶ 86).  This is sufficient to survive a motion to dismiss. *See Peprah v. Williams*, Civ. No. GLR 18-990, 2019 WL 224245, at *6 (D. Md. Jan. 15, 2019) (plaintiff sufficiently pleaded a failure to train claim against Howard County by stating that it failed to: adequately train police officers against arrest and imprisonment without probable cause; effectively instruct officers that they have a duty to prevent and report false arrest when it occurs; and "failed to critically evaluat[e] the need for a change in training").

This case is distinguishable from *Peters*, *supra*, and from *Devi v. Prince George's County*, Civ. No. DKC 16-3790, 2017 WL 35924532 (D. Md. Aug. 21, 2017). In *Peters*, the plaintiff merely stated in a conclusory, boilerplate fashion that the City of Mt. Rainer "fail[ed] to train and properly supervise its officers." 2014 WL4855032, at *5. In *Devi,* the plaintiff merely stated that Prince George's County failed to "adequately train, supervise, and discipline its officer against the use of excessive force." 2017 WL 35924532, at *3. Here, as stated previously, Mr. Hoffman

identifies the nature of the training deficiencies: lack of proper training on the permissible use of force and "the duty of officers to prevent and report excessive force when it occurs." (Amended Complaint, ¶¶ 35, 38, 39).

Regarding the second element of a failure to train claim, the Court also finds that Mr. Hoffman has met his pleading burden. When alleging that Montgomery County made a "deliberate or conscious" choice to have insufficient training, Plaintiff must sufficiently allege that the municipality was "deliberately indiffer[ent] to the rights or persons with whom the untrained employees come into contact." *Peprah*, *supra*, at *6 (quoting *Connick*, *supra*, 563 U.S. at 6 (internal quotation omitted)). Next, "deliberate indifference" requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (quoting *Board of Cty. Commr's v. Brown*, 520 U.S. 397, 410 (1997)). In this case, then, Plaintiff must show that Montgomery County chose "to retain its training program despite 'actual or constructive notice' that an omission in the program causes officers 'to violate citizens' constitutional rights." *Peprah*, *supra*, at *6 (quoting *Connick*, at 61 and *Brown*, at 407).

In this case, Plaintiff alleges that Montgomery County does not "keep accurate records as to the number of instances where excessive force has been employed by its officers," and "lacks an effective internal affairs procedure and has no meaningful system to control and monitor the recurrence of excessive force by officers who have a pattern or history of such behavior." (Amended Complaint, ¶¶ 40, 86). These allegations, if true, state a plausible claim that MCPD officers have a pattern of engaging in excessive force, which Montgomery County has deliberately chosen not to document or control. *See Peprah*, 2019 WL 224245, at *7 (same).

Regarding the third element, causation, Mr. Hoffman must sufficiently allege that the failure to train was a custom that proximately caused the violation of his Fourth Amendment right

to be free from excessive force. *City of Oklahoma City* v. *Tuttle,* 471 U.S. 808, 823 (1985); *see also Spell*, *supra*, 824 F.2d at 1390 (training deficiency must make the constitutional violation "almost bound to happen, sooner or later, rather than merely likely to happen in the long run").The Court finds that Plaintiff has met his pleading burden as to the third element. The Amended Complaint sets forth how Montgomery County does not properly train its employees not to use excessive force and that before his incident, the municipality "permitted and tolerated a pattern and practice of unjustified, unreasonable, and illegal excessive force." (Amended Complaint, ¶¶ 34, 35, 38). Plaintiff also contends that he was unarmed and not resisting arrest, yet he was tasered repeatedly and was forcefully pinned with a knee hold to his head and neck for no reason. (Amended Complaint, ¶¶ 9-18). Plaintiff further maintains that the failure to train is what proximately caused his injuries. (Amended Complaint, ¶ 35). This is sufficient to plausibly state a claim for relief. *See Peprah*, 2019 WL 224245, at *7 (same).

In sum, the Court denies Montgomery County's motion to dismiss Mr. Hoffman's failure to train claim.

**D. Bifurcation**

Alternatively, Montgomery County again suggests that Count I and Count II be bifurcated for discovery and trial.

Pursuant to Fed. R. Civ. P. 42(b), a court may order "a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims" if doing so is more convenient, avoids prejudice, or expedites or economizes the judicial process. The burden is on the moving party to establish that bifurcation is appropriate. *Ryan v. City of Salem,* Civ. No. 16-565AC, 2017 WL 2426868, at *1 (D. Or. June 5, 2017) (citing cases). A trial court enjoys broad discretion when deciding whether to bifurcate claims for trial. *In re Hutchinson*, 5 F.3d 750, 758 (4th Cir. 1993);

*Dixon v. CSX Transp., Inc.*, 990 F.2d 1440, 1443 (4th Cir. 1993), *cert. denied*, 510 U.S. 915 (1993). When exercising its discretion, a court must decide "which procedure is more likely to result in a just and expeditious final disposition of the litigation." 9A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2388 (3d ed. 2019).

Montgomery County argues about the prejudice that would flow to Sgt. Thomas if its bifurcation request were not granted. (*See* ECF Nos. 22, 26, 39, 43). It is certainly true that Plaintiff must first prove that Sgt. Thomas committed a constitutional violation before a **jury** could even consider whether there is a *Monell* violation. *Young v. City of Mt. Rainier,* 238 F.3d 567, 579. (4th Cir. 2001) (emphasis supplied); *see also Temkin v. Frederick Cty. Comm'rs*, 945 F.2d 716, 724 (4th Cir. 1991) ("claim of inadequate training under [S]ection 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised"), *cert. denied*, 502 U.S. 1095 (1992).

However, Fed. R. Civ. P. 1 provides that a court should construe the Federal Rules of Civil Procedure to secure the "just, speedy, and inexpensive determination of every action and every proceeding." Fed. R. Civ. P. 26(b)(1) permits a plaintiff to discover all information that is relevant, not privileged, and proportional to the needs of the case. The term "relevance" has been "broadly construed to encompass **any** possibility that the information sought **may be** relevant to the claim or defense of any party." *O'Malley v. Trader Joes East, Inc.*, Civ. No. RDB 19-3273, 2020 WL 6118841, at *3 (D. Md. Oct. 15, 2020) (internal citation and quotation marks omitted) (emphasis supplied). This is a pretty low threshold. It does not matter whether the evidence is ultimately admissible at trial. The relevant inquiry is whether the information sought may possibly be relevant to a claim asserted in the Amended Complaint.

Defendant Montgomery County repeatedly argues about the prejudice that would flow to Sgt. Thomas. There is a wealth of case law in this District where Courts have bifurcated Section 1983 claims against individual actors from *Monell* claims as it relates to **trial**. *See, e.g., Tserkis v. Baltimore Cty.*, Civ. No. ELH 19-202, 2019 WL 4932596 (D. Md. Oct. 4, 2019); M*arryshow v. Bladensburg*, 139 F.R.D. 318 (D. Md. 1991). Thus, the Court exercises its discretion and will bifurcate Count II from Count I for purposes of trial, because trial against Montgomery County would only be necessary if a jury first finds that Sgt. Thomas engaged in excessive force. *See Okezie v. Prince George's Cty.*, Civ. No. CBD 13-0168, 2014 WL 1334188, at *2 (D. Md. Apr. 1, 2014). Bifurcating Count I from Count II for trial is likely the easiest way to avoid any possible prejudice to Sgt. Thomas that could flow from allowing Plaintiff to introduce other instances of police misconduct during the same trial.[8]

However, the Court will deny Montgomery County's motion to bifurcate discovery. When arguing that discovery should be bifurcated, Montgomery County argues in conclusory fashion about "scare resources," "significant costs" and "stream[lining] the issues." (ECF No. 22, 26, 39 43). Montgomery County's boilerplate argument is bereft of any specific facts to support these broad statements. The Court finds that Plaintiff should be given "the opportunity that all litigants before this Court ordinarily have—to use the means provided by the Federal Rules to try to prove his claim. *Palma*, *supra*, 598 F.Supp.3d at 299(quoting *Lopez v. City of New York,* Civ. No. 20-2502(LJL), 2021 WL 2739058, at *2 (S.D.N.Y. July 1, 2021). Allowing full discovery to proceed now will promote a more expeditious disposition of the litigation

---

[8] The Court finds that it *might be* the easiest way to avoid prejudice, because at least one other court in the District has found such fears "speculative," as "any such concerns can be adequately addressed through *in limine* proceedings and cautionary jury instructions designed to mitigate any prejudicial spillover of claims." *Palma v. Montgomery Cnty., Maryland*, 598 F.Supp.3d, 288, 300 (D. Md. 2022)

One significant factor related to the production of relevant discovery is proportionality. *Victor Stanley, Inc. v. Creative Pipe Inc.*, 269 F.R.D. 497, 523 (D. Md. 2010); *see also* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). Discovery sought must not be disproportionate to the needs of the case, "considering the importance of the issues at stake in the action." Fed. R. Civ. P. 26(b)(1).

The Court will not allow expansive discovery requests from Plaintiff that are disproportionate to the needs of this case. Discovery sought must not be voluminous. Simply put, the Court will not permit discovery to become unwieldy, as that would likely waste judicial resources and not promote judicial economy. The Court can certainly manage any challenges that Montgomery County makes to Plaintiff's discovery requests that run afoul of the discovery rules.

In sum, on this record, the Court will exercise its discretion and deny the request to stay discovery as to Count II.[9]

## IV.   CONCLUSION

For the aforementioned reasons, the Motion to Dismiss-Bifurcate will be **GRANTED IN PART, DENIED IN PART**. The request to Dismiss Count II is **GRANTED,** as it relates to nine incidents, and **DENIED** as it relates to six incidents, as set forth herein. The request to bifurcate Count I from Count II for trial is **GRANTED**. However, the request to stay discovery related to Count II is **DENIED**.

A separate order will follow.

Date: January 24, 2023                                     /s/
                                                           The Honorable Gina L. Simms
                                                           United States Magistrate Judge

---

[9] If summary judgment briefing is required and the defendants prevail on the individual and/or municipality claims, then no jury would ever hear the *Monell* claim, so there would be no prejudice to Sgt. Thomas. *Palma, supra*, at 300 (citing *Marcum v. Scioto Cnty.*, Civ. No.10-790, 2012 WL 2674303, at *3 (S.D. Ohio Jul. 5, 2012)).